**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| MARK NIEDELSON, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | Case No. 1:20-cv-05054 |
| | ) | |
| DELOITTE CONSULTING, LLP, | ) | |
| | ) | |
| Defendant. | ) | JURY DEMAND |

## **COMPLAINT – CLASS ACTION**

## **INTRODUCTION**

1.       Businesses that collect and store sensitive information about their customers have a duty to safeguard that information and ensure it remains private. This responsibility is essential where a business keeps and stores its customers' highly personal information, such as their names, email addresses, phone numbers, social security numbers, and/or bank account and/or routing information.

2.        Plaintiff Mark Niedelson brings this action to obtain redress for the conduct of Defendant Deloitte Consulting LLP in failing to properly secure and safeguard Personally Identifying Information described above ("Personally Identifying Information" or "Personally Identifying Information").

## **JURISDICTION AND VENUE**

3.       This Court has subject matter jurisdiction over this case pursuant to 28 U.S.C.

-1-

§1332(d), the Class Action Fairness Act. There are more than 100 class members. Plaintiff is a

citizen of a state different from any defendant. The amount in controversy on a classwide basis

exceeds $5,000,000, exclusive of interest and costs.

4.     Venue in this District is proper because a material part of the events at issue

occurred here.

### PARTIES

5.     Plaintiff Mark Neidelson is a citizen of Illinois and a resident of Chicago.

6.     Defendant Deloitte Consulting LLP is a Delaware corporation with its principal

place of business at 30 Rockefeller Plaza, New York, New York 10112. It does business in

Illinois. Its registered agent and office is Illinois Corporation Service Company, 801 Adlai

Stevenson Drive, Springfield, Illinois 62703-4261.

### FACTS

7.     As part of the federal government's Pandemic Unemployment Assistance

("PUA") program, Deloitte entered into contracts with various state agencies – including the

Illinois Department of Employment Security ("IDES"), the Ohio Department of Job and Family

Services ("ODJFS"), the Colorado Department of Labor and Employment ("CDLE") and the

Arkansas Division of Workforce Services ("ADWS") – to help those states administer the PUA

program by designing, building, and maintaining web-based portals through which individuals

may apply for unemployment benefits and communicate with state officials.

8.     The PUA, established pursuant to the Coronavirus Aid Care and Economic

Security Act ("CARES" Act), expanded unemployment insurance eligibility to self-employed workers, freelancers, independent contractors, and part-time contractors impacted by the COVID-19 pandemic.

9. Because the PUA program required a new processing system to handle these new types of claims, which are distinct from regular unemployment claims, states including Ohio, Illinois, and Colorado contracted with Deloitte to design a cloud-based portal system.

10. Deloitte launched the system on or about May 11, 2020.

11. Deloitte knew that safeguarding unemployment applicants' Personally Identifying Information is of critical importance due to the serious harm flowing from a compromise of that data, particularly when it involves private financial information like an applicant's social security number.

12. The U.S. Federal Trade Commission ("FTC") in fact publishes a guide for businesses regarding the proper protection of Personally Identifying Information. See Protecting Personally Identifying Information: A Guide for Business (October 2016).

13. Plaintiff applied for benefits under the PUA program through the web-portal created and maintained by Deloitte, inputting his Personally Identifying Information.

14. On May 15, 2020, Illinois State Representative Terri Bryant sent a letter to Illinois Governor Pritzker informing him that a constituent of hers had accessed a spreadsheet on the IDES portal that contained the Personally Identifying Information for thousands of unemployment applicants, including name, address, social security number, and unemployment claimant ID number.

15.     Deloitte's system had allowed applicants' Personally Identifying Information to

be

exposed to the public, including applicants' social security number, bank account and routing

numbers, and other sensitive information.

16.     In May 2020, officials from these state agencies publicly announced that these

digital systems Deloitte designed, built and maintained allowed public access to unemployment

applicants' Personally Identifying Information, including but not limited to their name, social

security number, and street address associated with individuals' PUA claims, exposing this

sensitive private data to unauthorized third parties (the "Data Breach").

17.     In May  2020, Plaintiff received correspondence on the letterhead of IDES

confirming this breach but attempting to minimize its significance:

May 21, 2020

Dear Mark G Niedelson Niedelson:

A limited data access issue recently occurred within the new Pandemic Unemployment
Assistance (PUA) system. An analysis found that *one* PUA claimant was able to
inadvertently access personal information of a limited number of other PUA
claimants when logged into the system last week. That same claimant reported the
issue and within an hour, it was corrected to prevent any future unauthorized
access.

The information viewed by this one person may have included your name, social
security number, and street address associated with your PUA claim. Immediately
upon learning of this issue, Deloitte Consulting LLP (Deloitte), the vendor who
built and maintains the PUA portal for IDES, began an investigation and stopped
any further unauthorized access of claimants' personal information.

Based upon that investigation, there is *no* indication that your personal information
was improperly used or is likely to be misused.

-4-

Out of an abundance of caution, Deloitte is offering you the option of enrolling in 12 months of free credit monitoring. A one-year membership of Experian's® IdentityWorks℠ identity protection service is available to you, at no cost. Attached to this email is a flyer from Experian IdentityWorks℠ describing the service and providing detailed instructions.

To enroll online for the Experian IdentityWorks℠ credit monitoring service, you can go to the Experian site using the link below. You will be instructed how to initiate the online membership and will need to provide your personal information requested for enrollment. You will also be asked to provide the code listed below to reflect the pre-paid purchase of the credit monitoring service. If you prefer, you can enroll on the phone by speaking with the Experian Customer Care team at 877.890.9332. Please provide engagement number **[xxxxxx]** as proof of eligibility for the Experian credit monitoring services. You will have until August 30, 2020, to activate this membership, which will then continue for 12 full months from the date of activation.

Code and link:

> Pre-paid Code: xxxxxxxxx

> Link: https://www.experianidworks.com/3bcredit

In addition, federal law entitles everyone to one free credit report per year from **each** of the three main credit bureaus, and you can obtain information regarding fraud alerts and security freezes from them:

Equifax (800) 525-6285
P.O. Box 740241
Atlanta, GA 30374
www.equifax.com

Experian (888) 397-3742
P.O. Box 2104
Allen, TX 75013
www.experian.com

TransUnion (800) 680-7289
P.O. Box 2000

Chester, PA 19022
www.tuc.com

Finally, to find out more about protecting personal information, visit the Illinois
Attorney General's  webpage at www.illinoisattorneygeneral.gov and/or the
Federal Trade Commission:

Federal Trade Commission, (202) 326-2222
Bureau of Consumer Protection
Federal Trade Commission
600 Pennsylvania Ave, NW
Washington, DC 20580
https://www.ftc.gov

We apologize for any concerns or inconvenience that this incident has caused.
Please be assured that we take very seriously our responsibility to safeguard the
personal information you entrust to our care, and deeply regret that this incident
occurred.

Experian IdentityWorks - Flyer.pdf
173.1kB

18.     On information and belief, the letter was in fact sent by Deloitte.

19.     In fact, the information was misused.

20.     The communication was misleading, in that while one person reported the breach,

there was no reason to believe that it was that limited.

21.     Plaintiff received an email from his bank immediately after the breach.  Upon

responding, Plaintiff was informed of a password change he did not authorize.  The bank

informed Plaintiff that several phone numbers had been added to the account.  They were not his.

22.     Plaintiff's Costco credit card was charged with purchases that he did not make or

authorize.

23.     Plaintiff had to get a new account, new checks, new debit card and new credit

card.

24.     Later that same day, Plaintiff received another email of a password change/tampering of his account.

25.     In the end, his accounts were frozen.

26.     Plaintiff was put to substantial trouble, loss of time, and expense contacting financial institutions, credit card issuers and the credit bureaus.

27.     Plaintiff is in  imminent danger of additional fraudulent transactions and other concrete, tangible harm.

28.     Deloitte was aware of its duty to safeguard the Personally Identifying Information that it collected, and unemployment applicants relied on Defendant to take every precaution to safeguard their Personally Identifying Information.

29.     Defendant failed to safeguard Plaintiff's Personally Identifying Information and, as a result, Plaintiff's Personally Identifying Information was exposed as part of the Data Breach.

30.     Defendant's failure to safeguard Plaintiff's and the Class's Personally Identifying Information is particularly dangerous here where the exposed sensitive information includes social security numbers. According to Paige Schaffer, CEO of Generali Global Assistance's identity and digital protection services global unit, "where social security numbers are involved, victims' identity fraud risk remains elevated, if not for several years then for life."

31.     Defendant itself acknowledged the imminent harm caused by the Data Breach, as it is offering 12 months of free credit monitoring to all PUA unemployment applicants in the affected states.

## **CLASS ALLEGATIONS**

32.     Plaintiff brings this action on behalf of a class and subclass pursuant to Fed. R. Civ.P. 23(a) and (b)(3).

33.     The class includes all persons in the United States whose Personally Identifying Information was compromised as a result of the Data Breach.

34.     The subclass includes all persons in Illinois whose Personally Identifying Information was compromised a result of the Data Breach.

35.     Excluded from the Class are Deloitte Consulting LLP and its officers, directors, legal representatives, successors, subsidiaries, and assigns.

36.     Also excluded from the Class are any judicial officer presiding over this matter, members of their immediate family, and members of their judicial staff.

37.     The members of the Class are so numerous and geographically dispersed that joinder is impracticable. Although the precise number of individuals in the Class is unknown at this time, upon information and belief the number exceeds 100,000.

38.     Class members are readily identifiable from information and records in Defendant's possession, custody, or control and from those of State agencies.

39.     There are questions of law and fact common to the class members, which common  questions predominate over any questions relating to individual class members.  The predominant common questions are:

> a.     Whether Defendant owed a duty to use reasonable care to avoid causing foreseeable risk of harm to Plaintiff and members of the Class when obtaining, storing, using, and managing Personally Identifying Information, including taking action to safeguard such data;

-8-

b.  Whether Defendant failed to safeguard Plaintiff's and the Class members' Personally Identifying Information;

c.  Whether Defendant implemented and maintained data security measures that it knew or should have known were unreasonable and inadequate to protect Personally Identifying Information;

d.  Whether Defendant negligently allowed Personally Identifying Information to be accessed, used, or disclosed by third parties;

e.  Whether Defendant failed to timely and adequately notify Plaintiff and members of the Class that its data systems were breached;

f.  Whether Plaintiff and members of the Class are entitled to damages and, if so, the measure of such damages; and

g.  Whether Plaintiff and members of the Class are entitled to injunctive, equitable, declaratory and/or other relief, and if so, the nature of such relief.

40.  Plaintiff's claims are typical of the claims of the absent class members.  All are based on the same factual and legal theories.

41.  Plaintiff will fairly and adequately represent the class members.  Plaintiff has retained counsel experienced in class actions and consumer litigation.

42.  A class action is superior for the fair and efficient adjudication of this matter, in that:

a.  Individual actions are not economically feasible.

b.      If prosecuted individually, the claims of each Class member would rely upon the same material facts and legal theories and seek the same relief, resulting in judicial inefficiency.

## COUNT I – NEGLIGENCE

43.     Plaintiff incorporates paragraphs 1-41.

44.     Defendant required Plaintiff and Class members to submit Personally Identifying Information in order to obtain unemployment benefits through the PUA system.

45.     Defendant knew or should have known the risks inherent in collecting and storing the Personally Identifying Information of Plaintiff and the Class members.

46.     Defendant owed a duty to use reasonable care to avoid causing foreseeable risk of harm to Plaintiff and members of the Class when obtaining, storing, using, and managing Personally Identifying Information, including taking action to reasonably safeguard such data and providing notification to Plaintiff and the Class members of any breach in a timely manner so that appropriate action can be taken to minimize or avoid losses.

47.     Numerous courts and legislatures have recognized the existence of a specific duty to reasonably safeguard Personally Identifying Information.

48.     Plaintiff and the Class members were the intended beneficiaries of Defendant's duty to safeguard Personally Identifying Information, creating a special relationship between them and Defendant.

49.     Plaintiff and the Class members entrusted Defendant with their Personally

Identifying Information in order to obtain necessary unemployment benefits in the midst of a pandemic, and they relied on Defendant to maintain reasonable and adequate security measures in order to protect that Personally Identifying Information from disclosure.

50.     Only Defendant was in a position to ensure that its systems were sufficient to protect the Personally Identifying Information that Plaintiff and the Class members entrusted to it.

51.     It was foreseeable that injury to Plaintiff and Class members would result from Defendant's mishandling of Personally Identifying Information including, but not limited to, Defendant's failure to use reasonable security measures to protect such Personally Identifying Information.

52.     Defendant assumed the duty to act with reasonable care in managing its data, and to use reasonable security measures to protect such data, including the duty to comply with data security industry standards.

53.     Defendant knew or should have known of the significant risk that its computer systems could be breached, in particular in light of the numerous recent data breach incidents around the country.

54.     Defendant negligently breached its common law duties and industry standards of care by:

> a.     Mishandling the Personally Identifying Information of Plaintiff and Class members;
>
> b.     Failing to use reasonable and adequate security measures to protect that Personally Identifying Information;

    c.    Failing to identify the Data Breach in a timely manner and accurately describe it to the affected persons.

55.    Among other things, Defendant:

    a.    Mismanaged its system

    b.    Failed to identify reasonably foreseeable internal and external risks to the security, confidentiality, and integrity of customer information that resulted in the unauthorized disclosure, misuse, alteration, destruction or other compromise of such information;

    c.    Mishandled its data security by failing to assess the sufficiency of its safeguards in place to control these risks;

    d.    Failed to design and implement information safeguards to control these risks;

    e.    Failed to adequately test and monitor the effectiveness of the safeguards' key controls, systems, and procedures; and/or

    f.    Failing to evaluate and adjust its information security program in light of the circumstances alleged herein.

56.    As a direct and proximate result of Defendant's negligent acts of misfeasance and nonfeasance, Plaintiff and Class members have suffered and continue to suffer injury, including loss of time and productivity through efforts to ameliorate, mitigate, and deal with the future consequences of the Data Breach; theft of their valuable Personally Identifying Information; and the imminent and certain impeding injury flowing from fraud and identity theft posed by their Personally Identifying Information being placed in the hands of unauthorized third parties.

WHEREFORE, the Court should enter judgment in favor of Plaintiff and the class and against Defendant for:

i.      Appropriate damages;

ii.     Injunctive relief requiring Defendant to:

   (1)   Develop a security protocol to protect all data collected or received through the course of its business in accordance with the FTC Act and other federal, state, and local laws, and best practices under industry standards;

   (2)   Design, maintain, and test its computer systems to ensure that Personally Identifying Information in its possession is adequately secured and protected;

   (3)   Engage third-party security auditors and internal security personnel to conduct testing, including simulated attacks, penetration testing, and audits on Defendant's systems on a periodic basis and ordering it to promptly correct any problems or issues detected by those auditors;

   (4)   Audit, test, and train their security personnel to run automated security monitoring, aggregation, filtering and reporting on log information in a unified manner;

   (5)   Encrypt all Personally Identifying Information;

(6)    Purge, delete, and destroy in a reasonably secure and timely manner any Personally Identifying Information no longer necessary for their provision of services;

(7)    Routinely and continually conduct internal training and education to inform personnel how to identify and contain a breach and what to do in response;

(8)    Deploy appropriate and up-to-date SPAM filters, web filters, and antivirus solutions;

(9)    Employ standards for password expiration and complexity;

(10)   Educate its employees and conduct training sessions with mock phishing exercises.

(11)   Disclose any future data breaches in a timely and accurate manner.

iii.    Costs of suit;

iv.    Such other or further relief as is proper.

## COUNT II – NEGLIGENCE PER SE

57.    Plaintiff incorporates paragraphs 1-41.

58.    Section 5 of the Federal Trade Commission Act, 15 U.S.C. § 45, prohibits "unfair . . . practices in or affecting commerce" including, as interpreted and enforced by the FTC, the unfair practice of failing to act reasonably in the management of the data, and to use reasonable security measures to protect such data by companies such as Defendant. FTC guidelines, publications, and consent orders described above also form the basis of Defendant's duty.

-14-

59. Defendant violated §5 of the FTC Act (and similar state statutes) by mishandling Plaintiff's and the Class members' Personally Identifying Information, failing to use reasonable measures to protect the Personally Identifying Information, and by not complying with applicable industry standards.

60. Defendant's violation of §5 of the FTC Act (and similar state statutes) constitutes negligence per se.

61. Plaintiff and the Class are within the scope of persons that §5 of the FTC Act (and similar state statutes) was intended to protect.

62. The harm that has occurred is the type of harm the FTC Act (and similar state statutes) was intended to guard against. The FTC has pursued over fifty enforcement actions against businesses which, as a result of their failure to employ reasonable data security measures and avoid unfair and deceptive practices, caused the same harm suffered by Plaintiff and the Class here.

63. As a direct and proximate result of Defendant's negligence per se, Plaintiff and the Class have suffered and continue to suffer injury and damages, including loss of time and productivity through efforts to ameliorate, mitigate, and deal with the future consequences of the Data Breach; theft of their valuable Personally Identifying Information; and the imminent and certain impeding injury flowing from fraud and identity theft posed by their Personally Identifying Information being placed in the hands of unauthorized third parties.

WHEREFORE, the Court should enter judgment in favor of Plaintiff and the class and against Defendant for:

      i.     Appropriate damages;

ii.    Injunctive relief requiring Defendant to:

(1)    Develop a security protocol to protect all data collected or received through the course of its business in accordance with the FTC Act and other federal, state, and local laws, and best practices under industry standards;

(2)    Design, maintain, and test its computer systems to ensure that Personally Identifying Information in its possession is adequately secured and protected;

(3)    Engage third-party security auditors and internal security personnel to conduct testing, including simulated attacks, penetration testing, and audits on Defendant's systems on a periodic basis and ordering it to promptly correct any problems or issues detected by those auditors;

(4)    Audit, test, and train their security personnel to run automated security monitoring, aggregation, filtering and reporting on log information in a unified manner;

(5)    Encrypt all Personally Identifying Information;

(6)    Purge, delete, and destroy in a reasonably secure and timely manner any Personally Identifying Information no longer necessary for their provision of services;

-16-

(7)     Routinely and continually conduct internal training and
        education to inform personnel how to identify and contain a
        breach and what to do in response;

(8)     Deploy appropriate and up-to-date SPAM filters, web
        filters, and antivirus solutions;

(9)     Employ standards for password expiration and complexity;

(10)    Educate its employees and conduct training sessions with
        mock phishing exercises.

(11)    Disclose any future data breaches in a timely and accurate
        manner.

iii.    Costs of suit;

iv.     Such other or further relief as is proper.

## COUNT III – BREACH OF IMPLIED CONTRACT

64.     Plaintiff incorporates paragraphs 1-41.

65.     Defendant invited and induced unemployment applicants, including Plaintiff and
Class members, to use its PUA portal.

66.     Implicit in Defendant's offer was that it would safeguard the Personally
Identifying Information using reasonable or industry-standard means.

67.     Based on this understanding, Plaintiff and Class members accepted Defendant's
offer and provided their Personally Identifying Information to Defendant.

68.     Plaintiff and class members would not have provided their Personally Identifying
Information had they known Defendant would not safeguard it as impliedly promised.

-17-

69. Plaintiff and class members fully performed their obligations under the implied contracts with Defendant.

70. Defendant breached the implied contracts by failing to safeguard Plaintiff's and class members' Personally Identifying Information, causing direct and substantial damages to Plaintiff and class members.

WHEREFORE, the Court should enter judgment in favor of Plaintiff and the class and against Defendant for:

      i.      Appropriate damages;

     ii.      Injunctive relief requiring Defendant to:

          (1)     Develop a security protocol to protect all data collected or received through the course of its business in accordance with the FTC Act and other federal, state, and local laws, and best practices under industry standards;

          (2)     Design, maintain, and test its computer systems to ensure that Personally Identifying Information in its possession is adequately secured and protected;

          (3)     Engage third-party security auditors and internal security personnel to conduct testing, including simulated attacks, penetration testing, and audits on Defendant's systems on a periodic basis and ordering it to promptly correct any problems or issues detected by those auditors;

(4)     Audit, test, and train their security personnel to run automated security monitoring, aggregation, filtering and reporting on log information in a unified manner;

(5)     Encrypt all Personally Identifying Information;

(6)     Purge, delete, and destroy in a reasonably secure and timely manner any Personally Identifying Information no longer necessary for their provision of services;

(7)     Routinely and continually conduct internal training and education to inform personnel how to identify and contain a breach and what to do in response;

(8)     Deploy appropriate and up-to-date SPAM filters, web filters, and antivirus solutions;

(9)     Employ standards for password expiration and complexity;

(10)    Educate its employees and conduct training sessions with mock phishing exercises.

(11)    Disclose any future data breaches in a timely and accurate manner.

iii.    Costs of suit;

iv.     Such other or further relief as is proper.

## **COUNT IV – BAILMENT**

71.    Plaintiff incorporates paragraphs 1-41.

72.    Paintiff and Class members provided, or authorized disclosure of, their Personally

-19-

Identifying Information to Defendant for the exclusive purpose of applying for unemployment benefits and using the associated portal.

73. In allowing their Personally Identifying Information, to be made available to Defendant, Plaintiff and Class members intended and understood that Defendant would adequately safeguard their Personally Identifying Information.

74. For its own benefit, Defendant accepted possession of Plaintiff's and Class members' Personally Identifying Information for purpose of making available its own service.

75. Defendant understood that Plaintiff and Class members expected Defendant to adequately safeguard their personal information. Accordingly, a bailment was established for the parties' mutual benefit.

76. During the bailment, Defendant owed a duty to Plaintiff and the Class members to exercise reasonable care, diligence, and prudence in protect their Personally Identifying Information.

77. Defendant breached its duty of care by failing to take appropriate measures to safeguard Plaintiff's and the Class members' Personally Identifying Information, resulting in the unauthorized disclosure of their Personally Identifying Information.

78. As a direct and proximate result of Defendant's breach of its duty, Plaintiff and Class members suffered damages that were reasonably foreseeable to Defendant.

79. As a direct and proximate result, the Personally Identifying Information Plaintiff and the Class members entrusted to Defendant during the bailment was damaged, and its value diminished.

WHEREFORE, the Court should enter judgment in favor of Plaintiff and the class and against Defendant for:

      i.     Appropriate damages;

     ii.     Injunctive relief requiring Defendant to:

          (1)     Develop a security protocol to protect all data collected or received through the course of its business in accordance with the FTC Act and other federal, state, and local laws, and best practices under industry standards;

          (2)     Design, maintain, and test its computer systems to ensure that Personally Identifying Information in its possession is adequately secured and protected;

          (3)     Engage third-party security auditors and internal security personnel to conduct testing, including simulated attacks, penetration testing, and audits on Defendant's systems on a periodic basis and ordering it to promptly correct any problems or issues detected by those auditors;

          (4)     Audit, test, and train their security personnel to run automated security monitoring, aggregation, filtering and reporting on log information in a unified manner;

          (5)     Encrypt all Personally Identifying Information;

(6)     Purge, delete, and destroy in a reasonably secure and timely manner any Personally Identifying Information no longer necessary for their provision of services;

(7)     Routinely and continually conduct internal training and education to inform personnel how to identify and contain a breach and what to do in response;

(8)     Deploy appropriate and up-to-date SPAM filters, web filters, and antivirus solutions;

(9)     Employ standards for password expiration and complexity;

(10)    Educate its employees and conduct training sessions with mock phishing exercises.

(11)    Disclose any future data breaches in a timely and accurate manner.

iii.     Costs of suit;

iv.     Such other or further relief as is proper.

## COUNT V – UNJUST ENRICHMENT

80.    Plaintiff incorporates paragraphs 1-41.

81.    Defendant knowingly and deliberately enriched itself by saving the costs it reasonably should have expended on security measures to secure Plaintiff's and Class members' Personally Identifying Information.

82.    Instead of providing for a reasonable level of security that would have prevented

the breach, as is common practice among companies entrusted with such Personally Identifying Information, Defendant failed to do so for the purpose of increasing its own profits at the expense of Plaintiff and Class members.

83.     Defendant continued to obtain the benefits conferred on them by Plaintiff and Class Members.

84.     Plaintiff and Class members suffered harm as a direct and proximate result, in the forms of, inter alia, attempted identity theft, time and expenses mitigating harms, diminished value of Personally Identifying Information, loss of privacy, and increased risk of harm.

85.     Defendant profited from its acts and omissions.

86.     Based on these acts and omissions, which caused the unauthorized public release of Plaintiff's and the Class members' sensitive Personally Identifying Information, it would be inequitable, unconscionable, and unlawful to permit Defendant to retain the benefits it derived as a consequence of its conduct.

WHEREFORE, the Court should enter judgment in favor of Plaintiff and the class and against Defendant for:

       i.    Appropriate damages;

      ii.    Costs of suit;

    iii.    Injunctive relief requiring Defendant to:

               (1)    Develop a security protocol to protect all data collected or received through the course of its business in accordance with the FTC Act and other federal, state, and local laws, and best practices under industry standards;

(2)      Design, maintain, and test its computer systems to ensure that Personally Identifying Information in its possession is adequately secured and protected;

(3)      Engage third-party security auditors and internal security personnel to conduct testing, including simulated attacks, penetration testing, and audits on Defendant's systems on a periodic basis and ordering it to promptly correct any problems or issues detected by those auditors;

(4)      Audit, test, and train their security personnel to run automated security monitoring, aggregation, filtering and reporting on log information in a unified manner;

(5)      Encrypt all Personally Identifying Information;

(6)      Purge, delete, and destroy in a reasonably secure and timely manner any Personally Identifying Information no longer necessary for their provision of services;

(7)      Routinely and continually conduct internal training and education to inform personnel how to identify and contain a breach and what to do in response;

(8)      Deploy appropriate and up-to-date SPAM filters, web filters, and antivirus solutions;

(9)      Employ standards for password expiration and complexity;

(10)    Educate its employees and conduct training sessions with mock phishing exercises.

(11)    Disclose any future data breaches in a timely and accurate manner.

iv.    Such other or further relief as is proper.

## COUNT VI – VIOLATION OF NEW YORK GENERAL BUSINESS LAW § 349

87.    Plaintiff incorporates paragraphs 1-41.

88.    New York General Business Law  §349 prohibits "[d]eceptive acts and practices in the conduct of any business, trade or commerce or in the furnishing of any service in this state."

89.    Deloitte furnished the services at issue from New York.

90.    Defendant violated GBL 349 in connection with the data breach.

91.    Deloitte was providing services relating to the furnishing of unemployment benefits to the public at large.

92.    Plaintiff and Class Members suffered damages that were attributable to Defendant's failure to maintain the confidentiality of their Personally Identifying Information.

93.    Plaintiff and the class members are entitled to sue under GBL §349(h) for actual damages, statutory damages, injunctive relief, attorneys' fees and costs.

WHEREFORE, the Court should enter judgment in favor of Plaintiff and the class and against Defendant for:

i.    Statutory damages;

ii.    Actual damages;

-25-

iii.  Injunctive relief requiring Defendant to:

(1)  Develop a security protocol to protect all data collected or received through the course of its business in accordance with the FTC Act and other federal, state, and local laws, and best practices under industry standards;

(2)  Design, maintain, and test its computer systems to ensure that Personally Identifying Information in its possession is adequately secured and protected;

(3)  Engage third-party security auditors and internal security personnel to conduct testing, including simulated attacks, penetration testing, and audits on Defendant's systems on a periodic basis and ordering it to promptly correct any problems or issues detected by those auditors;

(4)  Audit, test, and train their security personnel to run automated security monitoring, aggregation, filtering and reporting on log information in a unified manner;

(5)  Encrypt all Personally Identifying Information;

(6)  Purge, delete, and destroy in a reasonably secure and timely manner any Personally Identifying Information no longer necessary for their provision of services;

(7)     Routinely and continually conduct internal training and education to inform personnel how to identify and contain a breach and what to do in response;

(8)     Deploy appropriate and up-to-date SPAM filters, web filters, and antivirus solutions;

(9)     Employ standards for password expiration and complexity;

(10)    Educate its employees and conduct training sessions with mock phishing exercises.

(11)    Disclose any future data breaches in a timely and accurate manner.

iv.     Attorney's fees, litigation expenses and costs of suit;

v.      Such other or further relief as is proper.


Submitted respectfully,


*/s/ Daniel A. Edelman*
Daniel A. Edelman


Daniel A. Edelman
Cathleen M. Combs
Bryan G. Lesser
**EDELMAN, COMBS, LATTURNER**
      **& GOODWIN, LLC**
20 South Clark Street, Suite 1500
Chicago, IL 60603-1824
(312) 739-4200
(312) 419-0379 (FAX)
Email address for service:
courtecl@edcombs.com

**JURY DEMAND**

Plaintiff demands trial by jury.

/s/ Daniel A. Edelman
Daniel A. Edelman

Daniel A. Edelman
**EDELMAN, COMBS, LATTURNER**
**& GOODWIN, LLC**
20 South Clark Street, Suite 1500
Chicago, IL 60603-1824
(312) 739-4200
(312) 419-0379 (FAX)